No. 23-1185

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

GREEN PLAINS TRADE GROUP, LLC, *et al.*

*Plaintiffs-Appellants*,

v.

ARCHER DANIELS MIDLAND COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois
Case No. 2:22-cv-02067 (Hon. Colin S. Bruce)

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

Adam J. Levitt (Counsel of Record)
John E. Tangren
Mark S. Hamill
DICELLO LEVITT LLP
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................ 1

ARGUMENT .................................................................................................. 2

A.    The basis of Green Plains' claim, Section 766A, has been recognized by the Nebraska Supreme Court twice. ................................................... 2

B.    ADM went far outside the issues on appeal in its response brief. .................... 4

C.    ADM placed Sections 766 and 766A on a collision course, but the torts run on parallel "tortious interference" tracks, both of which Nebraska law recognizes. ................................................................................ 6

D.    The recognition of Section 766 does not exclude the parallel recognition of Section 766A. ....................................................................... 10

E.    ADM focused on the wrong Restatement section in its response brief. .......... 14

F.    ADM blurred the distinction between the Restatement sections throughout its response brief. .............................................................. 20

G.    Green Plains showed that it sufficiently pleaded existence of the impaired contracts and ADM's knowledge of the contracts. .......................... 24

CONCLUSION ............................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen Family Foods, Inc. v. Capitol Carbonic Corp.*,
2011 WL 1205138 (Del. Super. Ct. Mar. 31, 2011) ................................ 7

*Antaki v. Saint Francis Med. Ctr.*,
2018 WL 1411205 (D. Neb. Mar. 21, 2018) ......................................... 16

*Barreca v. Nickolas*,
683 N.W.2d 111 (Iowa 2004) ................................................................ 7

*Bolz v. Myers*,
651 P.2d 606 (Mont. 1982) ................................................................... 7

*Briggs v. Newton*,
984 P.2d 1113 (Alaska 1999) ............................................................... 7

*DeLay First Nat'l Bank & Tr. Co. v. Jacobson Appliance Co.*,
243 N.W.2d 745 (Neb. 1976) ......................................................... 14, 15

*Denali Real Estate, LLC v. Denali Custom Builders, Inc.*,
926 N.W.2d 610 (Neb. 2019) .......................................................*passim*

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938) ............................................................................... 1

*Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*,
325 N.W.2d 20 (Minn. 1982) ................................................................ 7

*George A. Fuller Co. v. Chi. Coll. of Osteopathic Med.*,
719 F.2d 1326 (7th Cir. 1983) ............................................................ 13

*George Clift Enters., Inc. v. Oshkosh Feedyard Corp.*,
947 N.W.2d 510 (Neb. 2020) ......................................................... 16, 18

*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local Union No. 174*,
500 P.3d 119 (Wash. 2021)................................................................... 7

*Harlor v. Amica Mut. Ins. Co.*,
150 A.3d 793 (Me. 2016)....................................................................... 7

*Hennum v. City of Medina*,
402 N.W.2d 327 (N.D. 1987) ................................................................ 7

*Herman v. Endriss,*
    446 A.2d 9 (Conn. 1982) .................................................... 7

*Hroch v. Farmland Indus., Inc.,*
    548 N.W.2d 367 (Neb. Ct. App. 1996) ........................... 16, 17, 18

*K & K Mgmt., Inc. v. Lee,*
    557 A.2d 965 (Md. 1989) .................................................... 7

*Koster v. P & P Enters.,*
    539 N.W.2d 274 (Neb. 1995) ............................................. 18

*Levens v. Campbell,*
    733 So. 2d 753 (Miss. 1999) ............................................... 7

*Matheson v. Stork,*
    477 N.W.2d 156 (Neb. 1991) .............................. 8, 15, 17, 18

*Miller Chem. Co., Inc. v. Tams,*
    320 N.W.2d 759 (Neb. 1982) .............................. 8, 15, 16, 19

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.,*
    791 P.2d 587 (Cal. 1990) .................................................... 7

*Paris v. Crawford State Bank,*
    1993 WL 578 (Neb. Ct. App. Jan. 5, 1993) ...................... 16, 17

*Pettit v. Paxton,*
    583 N.W.2d 604 (Neb. 1998) .........................................*passim*

*Plattner v. State Farm Mut. Auto. Ins. Co.,*
    812 P.2d 1129 (Ariz. Ct. App. 1991) .................................. 7

*Prof'l Mgmt. Midwest, Inc. v. Lund Co.,*
    826 N.W.2d 225 (Neb. 2012) ............................................. 16

*Recio v. Evers,*
    771 N.W.2d 121 (Neb. 2009) .........................................*passim*

*Renner v. Wurdeman,*
    434 N.W.2d 536 (Neb. 1989) ............................................. 16

*Riddle v. Charter W. Bank,*
    2019 WL 1436996 (D. Neb. Apr. 1, 2019) ....................... 23, 24

*Robert's River Rides, Inc. v. Steamboat Dev. Corp.,*
    520 N.W.2d 294 (Iowa 1994) ............................................. 7

*Shafir v. Steele*,
727 N.E.2d 1140 (Mass. 2000) ............................................................ 7

*Steinhausen v. HomeServices of Neb., Inc.*,
857 N.W.2d 816 (Neb. 2015) ............................................................ 16

*Thompson v. Johnson*,
910 N.W.2d 800 (Neb. 2018) ............................................................ 19

*Tourdot v. Rockford Health Plans, Inc.*,
439 F.3d 351 (7th Cir. 2006) ............................................................ 13

*Westfield Dev. Co. v. Rifle Inv. Assocs.*,
786 P.2d 1112 (Colo. 1990) ............................................................ 7

*Wiekhorst Bros. Excavating & Equip. Co. v. Ludewig*,
529 N.W.2d 33 (Neb. 1995) ............................................ 16, 17, 18

*Wilspec Techs., Inc. v. DunAn Holding Grp. Co.*,
204 P.3d 69 (Okla. 2009) ............................................................ 7

**Other Authorities:**

Restatement (Second) of Torts § 766 ........................................*passim*

Restatement (Second) of Torts § 766A ......................................*passim*

## __INTRODUCTION__

At bottom, this appeal presents a simple *Erie*[1] question: may Plaintiffs state Section 766A[2] claims for tortious interference under Nebraska state law? In addressing this question, the district court was correct to focus on the Nebraska Supreme Court's binding decisions in *Pettit* and *Recio*,[3] but misunderstood their holdings and failed to follow their acceptance of Section 766A. ADM's defense of the ruling below disregards the precedential value of *Pettit* and *Recio*, where the Nebraska Supreme Court's recognition of Section 766A was implicit yet clear (and was neither advisory nor *dicta*).

ADM relies heavily on the rule that federal courts should not expand the grounds on which plaintiffs can plead their state law claims, but that rule only applies in the absence of guidance from the state courts. Instead, the operative rule to apply here is that federal courts with diversity jurisdiction over state law claims must follow state law as announced by the state supreme courts, which means that federal courts must not constrict the grounds on which plaintiffs can plead their state law claims. An affirmance would violate that rule by restricting "harm" and the "disrupted" relationship to "breach of contract," which is contrary to Nebraska law. ADM cannot create a novel issue by trying rewrite Section 766A out of *Pettit*

---

[1] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[2] Restatement (Second) of Torts Section 766A for Intentional Interference with Another's Performance of His Own Contract ("Section 766A").

[3] *Pettit v. Paxton*, 583 N.W.2d 604 (Neb. 1998); *Recio v. Evers*, 771 N.W.2d 121 (Neb. 2009).

1

and *Recio*. ADM's attempted reinterpretation of *Pettit* and *Recio* is the novel issue, not Green Plains' reliance on *Pettit* and *Recio* for Justice Gerrard's recognition of Section 766A in those cases.

## ARGUMENT

### A.     The basis of Green Plains' claim, Section 766A, has been recognized by the Nebraska Supreme Court twice.

Green Plains alleges that ADM tortiously interfered with Green Plains' ethanol sales contracts from November 2017 through at least September 2019 through conduct that made Green Plains' performance of those contracts more expensive or burdensome. Indeed, ADM repeatedly unlawfully manipulated ethanol sales prices (and benchmark prices) downward, knowing that Green Plains sells ethanol to its customers at prices that are contractually indexed to the benchmark prices. ADM does not dispute that such conduct constitutes repeated violations of Section 766A.

Rather, ADM denies that Section 766A is Nebraska law, but that does not square with a fair reading of the Section 766A holdings in *Pettit* and *Recio*. The Nebraska Supreme Court implicitly recognized Section 766A in both of those decisions, both written by Justice John Gerrard in 1998 and 2009, respectively, and these two decisions thus serve as controlling precedent for this case.[4] The Nebraska Supreme Court has never rejected Section 766A, and ADM does not argue

---

[4] In *Pettit* and *Recio*, Justice Gerrard also enforced the breach requirement found in Restatement (Second) of Torts Section 766 for Intentional Interference with Performance of Contract by Third Person ("Section 766"), but that is not at issue in this litigation. *Pettit* and *Recio* are Section 766 and Section 766A cases, with the Section 766A holdings being relevant here.

otherwise. The dispositive issue in this appeal is whether the Nebraska Supreme Court accepted Section 766A in *Pettit* and *Recio*. There is no dispute that, if that is what Justice Gerrard did, *Pettit* and *Recio* are controlling precedent.

While the district court disagreed with ADM that *Pettit* and *Recio* unambiguously declined to recognize Section 766A, it ultimately granted ADM's motion to dismiss based in part on an incorrect finding that recognition of Section 766A in Nebraska is ambiguous. The district court acknowledged that Justice Gerrard could have implicitly recognized Section 766A as Nebraska law in *Pettit* and *Recio*, App. A-18, but held instead that Justice Gerrard neither accepted (nor rejected) Section 766A in those cases. In finding ambiguity regarding Nebraska's recognition of Section 766A, the district court relied on generic "tortious interference" cases that discuss a breach of contract requirement from a different Restatement section, Section 766. ADM did the same throughout its response brief. However, both the district court and ADM improperly conflate Section 766 and Section 766A. Both miss the fact that the Nebraska Supreme Court's recognition of Section 766, with its requirement to show breach of contract, does not define, ambiguate, or negate its parallel recognition of Section 766A, with its own, distinct requirement to show mere impaired performance of the contract.

To be clear, for Section 766, the plaintiff must show that the defendant caused the plaintiff's counterparty to breach a contract with the plaintiff (*i.e.*, the plaintiff must show breach of contract). In contrast, for Section 766A, as seen in *Pettit* and *Recio*, the plaintiff must show that the defendant caused the plaintiff's performance

of its contract to be more expensive or burdensome (*i.e.*, the plaintiff must show its impaired performance of the contact). Sections 766 and 766A are on parallel tracks, and neither tort defines, ambiguates, or negates the other. In *Pettit* and *Recio*, Justice Gerrard discussed breach of contract as an element of tortious interference with a business relationship in the context of Section 766, not Section 766A. Justice Gerrard recognized that Section 766 requires the plaintiff to show a breach of contract and that Section 766A requires the plaintiff to show impaired performance of contract. The Section 766 analysis is simply not relevant to Green Plains' claim under Section 766A.

Nonetheless, as a result of improperly conflating Sections 766 and 766A, the district court held that recognition of Section 766A was a novel question of state law. The district court then dismissed the Complaint based on its understanding that federal courts should not expand state law tort liability. However, this is not a Section 766 case, and never was. In framing this case otherwise, ADM defends against a strawman case that Green Plains did not bring. Section 766 is noise that ought not drown out the Section 766A signal. *Pettit* and *Recio* are the Section 766A cases in Nebraska jurisprudence; these are the two decisions worthy of this Court's consideration of this appeal.

**B. ADM went far outside the issues on appeal in its response brief.**

The district court opinion from which Green Plains appeals was narrow and focused on tightly circumscribed issues. The district court held only that it should refrain from holding that the Nebraska Supreme Court recognized Section 766A in *Pettit* and *Recio* and that Green Plains made insufficient allegations regarding

existence of contracts and ADM's knowledge of the contracts. Green Plains devoted its opening brief to showing why those holdings are in error and stuck to those issues.

ADM, however, did not stick to the issues in its response brief. To provide a non-exhaustive list, ADM unjustifiably attacked Green Plains for commencing this litigation in the District of Nebraska and for not amending its Complaint "despite receiving a great deal of discovery" or even a "vast amount of discovery," and even purported to question the merits of the case with editorial comments about Green Plains' interrogatory responses and the wisdom of selling ethanol at prices that are contractually indexed to benchmark prices.[5] ADM also asks the Court to stop this case because Green Plains purportedly has caused ADM "to waste substantial time and money" on the case.[6]

It is unfortunate that ADM attempts to introduce so many extraneous points to this narrow appeal; moreover, it is prejudicial for ADM to try to put Green Plains in a position of either responding to extraneous points or risk being open to a claim that the extraneous points are somehow "conceded." In this reply brief, Green Plains will address why the Section 766 cases on which ADM relies do not resolve questions about Section 766A, but Green Plains cannot address, and will not elevate (nor concede), the snipes, insinuations, and editorializations in ADM's response brief.

---

[5] *See* ADM Br. at 3, 6, 9.

[6] *See* ADM Br. at 13.

**C. ADM placed Sections 766 and 766A on a collision course, but the torts run on parallel "tortious interference" tracks, both of which Nebraska law recognizes.**

ADM argues that Nebraska could not have adopted Section 766A after it already adopted Section 766 because, purportedly, adopting Section 766 means, in effect, rejecting Section 766A. That is incorrect.

Sections 766 and 766A are on parallel tracks under Nebraska law. The recognition of one tort under state law does not affect the recognition of the other. ADM gave the Court lengthy string citations of inapposite Section 766 fact pattern cases (with their requirement for the plaintiff to show breach of contract) purporting to counter Green Plains' Section 766A cases (with their requirement for the plaintiff to show more expensive or burdensome performance of the contract, *i.e.*, to show impaired performance of the contract). However, Section 766 fact pattern cases are not controlling precedent for this Section 766A appeal; the controlling precedents are *Pettit* and *Recio*.

ADM does not claim that the Nebraska Supreme Court has ever been asked to overturn *Pettit* or *Recio*, let alone that it did so. Instead, ADM argues that the Nebraska Supreme Court must not have recognized Section 766A in *Pettit* and *Recio* because Section 766A requires the plaintiff to show impaired performance of contract, which ADM deems to be incompatible with the Nebraska Supreme Court's parallel recognition of Section 766 under which plaintiffs must show a breach of contract. ADM appears to argue that the Nebraska Supreme Court could not recognize both Section 766 and Section 766A because the former requires a breach of contract while the latter requires an impaired performance of contract. But the

Nebraska Supreme Court has recognized both torts. Indeed, other states that have adopted Section 766A have done so while also recognizing Section 766.

For example, Iowa and Delaware recognize Section 766 **and** Section 766A. *See Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 303 (Iowa 1994) (adopting Section 766A even while finding that plaintiff failed to state a claim thereunder);[7] *Allen Family Foods, Inc. v. Capitol Carbonic Corp.*, 2011 WL 1205138, at *5 (Del. Super. Ct. Mar. 31, 2011) (same). Indeed, all seventeen states that have adopted Section 766A have also adopted Section 766.[8]

Sections 766 and 766A branch out along parallel tracks from a general claim for "tortious interference," which requires only a showing of harm but does not limit the plaintiff to showing a specific type of harm like breach of contract or impaired performance. As the Nebraska Supreme Court has stated: "To succeed on a claim

---

[7] Abrogated, as to claims for defamation, by *Barreca v. Nickolas*, 683 N.W.2d 111 (Iowa 2004).

[8] In addition to Iowa, Delaware, and Nebraska, fourteen other Section 766 states have also adopted Section 766A. *See Briggs v. Newton*, 984 P.2d 1113, 1119 (Alaska 1999); *Plattner v. State Farm Mut. Auto. Ins. Co.*, 812 P.2d 1129, 1134 (Ariz. Ct. App. 1991); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 592 (Cal. 1990); *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1117 (Colo. 1990); *Herman v. Endriss*, 446 A.2d 9, 10 (Conn. 1982); *Harlor v. Amica Mut. Ins. Co.*, 150 A.3d 793, 799 (Me. 2016); *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 974 (Md. 1989); *Shafir v. Steele*, 727 N.E.2d 1140, 1144 (Mass. 2000); *Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 27 (Minn. 1982); *Levens v. Campbell*, 733 So. 2d 753, 760 (Miss. 1999); *Bolz v. Myers*, 651 P.2d 606, 610 (Mont. 1982); *Hennum v. City of Medina*, 402 N.W.2d 327, 337 (N.D. 1987); *Wilspec Techs., Inc. v. DunAn Holding Grp. Co.*, 204 P.3d 69, 74 (Okla. 2009); *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local Union No. 174*, 500 P.3d 119, 137 (Wash. 2021) (reversed on other grounds). Maryland and Washington (like Nebraska, Iowa, and Delaware) adopted Section 766A even while finding that the plaintiff failed to state a claim thereunder. *See K & K Mgmt.*, 557 A.2d at 974; *Glacier Nw.*, 500 P.3d at 137.

for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) ***proof that the interference caused the harm sustained***, and (5) damage to the party whose relationship or expectancy was disrupted." *Denali Real Estate, LLC v. Denali Custom Builders, Inc.*, 926 N.W.2d 610, 626–27 (Neb. 2019) (emphasis added).[9] ADM cited *Denali* but did not acknowledge this key holding, which traces back to, *inter alia*, *Pettit* and *Recio*.[10] ADM does not address the core elements of "harm sustained" or "disrupted" relationship even though those core elements govern claims under both Sections 766 and 766A, and instead focused only on the breach requirement for Section 766, which is the wrong Restatement section for this case. "Harm sustained," and damage from the "disrupted" relationship, are generic elements defined by the fact pattern in which the plaintiff finds itself and the specific tort under which the plaintiff is proceeding. Thus, a plaintiff pairs a general claim for "tortious interference" with the specific requirements of either Section 766 or Section 766A.

For Section 766 fact pattern cases, which this case is not, the Nebraska Supreme Court has held that plaintiffs must prove that their "harm sustained" was breach of contract. Thus, under Section 766, the "disrupted" relationship causes the plaintiff

---

[9] Citing *Miller Chem. Co., Inc. v. Tams*, 320 N.W.2d 759 (Neb. 1982), disapproved on other grounds, *Matheson v. Stork*, 477 N.W.2d 156 (Neb. 1991); *Pettit*, 583 N.W.2d 604; and *Recio*, 771 N.W.2d 121.

[10] *See* ADM Br. at 15.

to incur damages tied to a breach of contract. Green Plains never sued ADM under Section 766 because this is not a Section 766 fact pattern case.

For Section 766A fact pattern cases like this one, the Nebraska Supreme Court has held that plaintiffs must prove that their "harm sustained" was impaired performance of the contract. Thus, under Section 766A, the "disrupted" relationship causes the plaintiff to incur damages tied to its impaired performance of the contract. The only claim that Green Plains brings against ADM is under Section 766A in light of Green Plains' impaired performance of its ethanol sales contracts.

Sections 766 and 766A are both good law in Nebraska. The torts share the common elements stated in cases like *Denali*, but diverge on the nature of the "harm sustained" and the "disrupted" relationship. Plaintiffs can rely on Section 766 when there is breach of contract and can rely on Section 766A when there is impaired performance of contract. The torts are independent of each other. The fact that the harm and disruption for Section 766 is breach of contract does not ambiguate that the Nebraska Supreme Court recognized Section 766A in *Pettit* and again in *Recio*, and does not ambiguate that the harm and disruption for Section 766A is impaired performance of contract.

Sections 766 and 766A both originate with a defendant's unjustified intentional conduct but then branch out to bring the plaintiff relief for harm and disruption from either breach of contract under Section 766 or impaired performance of contract under Section 766A. ADM argues that the Nebraska Supreme Court's acceptance of Section 766 with its requirement for breach of contract somehow

ambiguates its acceptance of Section 766A with its requirement for impaired performance of contract, but that is false ambiguity. ADM does not explain how Section 766 precedent ambiguates independent Section 766A precedent, and it does not. Instead, ADM asks the Court to apply Section 766 holdings to Green Plains' Section 766A claim, but that would improperly deny Green Plains the opportunity that Nebraska law affords it to recover for the impaired performance of its contracts under Section 766A, as provided in *Pettit* and *Recio*. The district court's decision must be reversed so Green Plains may proceed according to that controlling precedent.

### D. The recognition of Section 766 does not exclude the parallel recognition of Section 766A.

ADM also asks the Court to find that the Nebraska Supreme Court's acceptance of Section 766 necessarily ambiguates its acceptance of Section 766A merely because the former offers the plaintiff relief when there is a breach of contract, and the latter offers the plaintiff relief when there is impaired performance of contract.[11] ADM does not provide authority for this novel approach to negating controlling precedent. Instead, ADM seeks, in effect, to use a long list of irrelevant holdings to distract from the relevant holdings from controlling authority cases. However, the fact that there may be more cases discussing Section 766 than Section 766A does not speak against the adoption of Section 766A. Section 766A remains in force in Nebraska law even if Section 766 gets more use.

---

[11] *See* ADM Br. at 26.

An analogy using two CTA El lines will illustrate why case counts or frequency of use are not useful for understanding Sections 766 and 766A. A traveler standing at the CTA El station at Clark/Lake who wants to take the El to Midway Airport must ride the Orange Line to go southwest. This is so even though if that traveler sees most of the riders at the station using the Brown Line to go north to Kimball. The common starting point at Clark/Lake does not mean that all of the riders using the Brown Line somehow change the fact that the traveler must still use the Orange Line to get to Midway. *Pettit* and *Recio* show that Section 766A is the right way to get a plaintiff that has suffered impaired performance rather than breach to their Section 766A relief, no less than the CTA map shows that the Orange Line is the right way to get a traveler to Midway. And anybody who tells a commuter to take the Brown Line from Clark/Lake to get to Midway is sending that commuter down the wrong track. Similarly, ADM would send this case down the wrong track with cases applying Section 766, when *Pettit* and *Recio*, the decisions that apply Section 766A, are controlling authority for Green Plains' Section 766A claim.

ADM also attempts to leverage the breach requirement from the Section 766 cases to suggest that the breach requirement is the only option for a "tortious inference" claim under Nebraska law, disregarding that the impaired performance requirement from the Section 766A cases is also available for a "tortious interference" claim under Nebraska law. When a defendant unjustifiably interferes with a plaintiff's contractual relationships, the plaintiff can seek justice under whichever of Section 766 or 766A fits the fact pattern. Both torts are available to

plaintiffs under Nebraska law. ADM exclusively relies on Section 766 cases, even though Green Plains sued under Section 766A. In contrast, Green Plains relies on *Pettit* and *Recio*, in which Justice Gerrard closed what might otherwise have been a loophole that allowed a tortfeasor to unjustifiably interfere with a plaintiff's contracts with impunity if the tortfeasor caused impaired performance but not a breach. In this appeal, ADM's reliance on Section 766 cases, if followed, would send the Court down the wrong track. True, there is a breach requirement for a Section 766 claim, but this is irrelevant to the Section 766A claim here. Similarly, announcements of the Addison stop on Brown Line trips to Kimball are true, but irrelevant to Orange Line trips to Midway.

The legal framework for tortious interference claims that emerges from Nebraska Supreme Court precedent thus establishes two paths. If the "harm sustained" and "disrupted" relationship is a breach of the contract, courts should go to Section 766 and proceed from there. Alternatively, if the "harm sustained" and "disrupted" relationship is impaired performance of the contract, courts should go to Section 766A and proceed from there. The "harm sustained" and "disrupted" relationship that ADM inflicted upon Green Plains was Green Plains' impaired performance of its ethanol sales contracts, so Green Plains followed Nebraska Supreme Court precedent and sued ADM under Section 766A.

While ADM refers to Nebraska Supreme Court Section 766 cases as "tortious interference" cases, it does not (and cannot) claim that any Nebraska Supreme Court "tortious interference" cases other than *Pettit* and *Recio* addressed Section

766A claims. The Nebraska Supreme Court has addressed Section 766A only in *Pettit* and *Recio*. Pre-*Pettit* (1998) cases do not benefit from Justice Gerrard's analysis in *Pettit*. ADM's pre- and post-*Pettit* cases that do not address a Section 766A fact pattern are not instructive and do not disturb or diminish Justice Gerrard's recognition of Section 766A in *Pettit*. Adoption of 766A in Nebraska is not "unclear" merely because ADM contests it. As this court has noted, "it is fairly easy to create an ambiguity when one wishes to do so." *Tourdot v. Rockford Health Plans, Inc.*, 439 F.3d 351, 354 (7th Cir. 2006) (finding that plain meaning of a statute was unambiguous and rejecting attempt "both to create and to resolve the ambiguity allegedly at issue").

Justice Gerrard treated Section 766A as Nebraska law in *Pettit*, and again in *Recio* (where he cited *Pettit*). That makes this case the opposite of *Fuller*,[12] which ADM relies on heavily,[13] where the plaintiff tried to proceed with an Illinois Section 766A claim even though Illinois never recognized Section 766A. The plaintiff in *Fuller* also cited Illinois Section 766 cases (wrong Restatement section) and an Indiana Section 766A case (wrong state) in support of its Illinois Section 766A claim. In contrast to the plaintiff in *Fuller*, Green Plains supports its Nebraska Section 766A claim with controlling precedent in which the Nebraska Supreme Court recognized Section 766A.

---

[12] *George A. Fuller Co. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330 (7th Cir. 1983).

[13] *See, e.g.*, ADM Br. at 16.

**E.    ADM focused on the wrong Restatement section in its response brief.**

ADM attempts to undermine Justice Gerrard's recognition of Section 766A in *Pettit* and *Recio* based on a misleading claim that all cases that address "tortious interference with a contract" in Nebraska require the plaintiff to show a breach of contract because "the Nebraska Supreme Court has insisted, in an unbroken series of decisions stretching back almost 50 years, that breach is a 'basic' and 'essential' element of the tort."[14] ADM's claim is misleading because every "tortious interference with a contract" case in Nebraska is a Section 766 case, except for *Pettit* and *Recio*, where the Nebraska Supreme Court recognized Section 766A as a cause of action.

ADM's principal case to show a purported "unbroken line" begins with a Section 766 case, *DeLay First Nat'l Bank & Tr. Co. v. Jacobson Appliance Co.*, 243 N.W.2d 745, 752 (Neb. 1976).[15] In *DeLay*, the Nebraska Supreme Court addressed whether a bank that financed inventory for an appliance store intentionally interfered with the store's contracts with its suppliers. The court affirmed dismissal because the bank engaged in "proper contact" with the suppliers. The appliance store did not allege impaired performance, and the court did not consider Section 766A; that was left for *Pettit* in 1998. Justice Gerrard cited *DeLay* in *Recio* only for the Nebraska Supreme Court's implicit endorsement of Section 772(a) and its principle that "a person does not incur liability for interfering with a business relationship by giving

---

[14] *See* ADM Br. at 1.

[15] See ADM Br. at 13.

truthful information to another."[16] Justice Gerrard did not cite *DeLay* for the elements of a Section 766 claim, let alone as a basis to limit a "tortious interference" claim under Nebraska law to only Section 766 claims to the exclusion of Section 766A claims. Moreover, in *Matheson*,[17] the Nebraska Supreme Court held that one of the "necessary elements of tortious interference with a business relationship or expectation" is simply "proof that the interference caused the harm sustained." *Matheson* is further proof that *DeLay* and the rest of ADM's Section 766 cases did not limit all possible "tortious interference" claims to cases involving a breach of contract. In *Matheson*, the Nebraska Supreme Court held that plaintiffs must prove "harm sustained," and did not limit plaintiffs to proving "breach of contract."[18]

In *Miller Chemical*,[19] the Nebraska Supreme Court described the passage that ADM cited from *DeLay* (regarding breach) as "dicta." ADM cited *Miller Chemical* to show that breach is a "mainstay" of Nebraska's law of "tortious inference."[20] However, *Miller Chemical* did not involve contractual relations, and the Nebraska Supreme Court did not decide *Miller Chemical* based on the presence or absence of a breach of contract. Instead, the Nebraska Supreme Court affirmed dismissal because the competitor's conduct in soliciting the plaintiff's customers "was justified

---

[16] *Recio*, 771 N.W.2d at 133.

[17] *Matheson*, 477 N.W.2d at 160.

[18] 477 N.W.2d at 160 (a plaintiff must "plead facts from which it can be inferred that he was harmed.").

[19] *Miller Chem.*, 320 N.W.2d at 762.

[20] *See* ADM Br. at 14.

and was competitive in nature."[21] *Miller Chemical* also held that "harm sustained" is one of the "essential elements of tortious interference with business relationships."[22] Breach is "harm sustained," but so is impaired performance. The Nebraska Supreme Court, and the District of Nebraska, have repeated the "harm sustained" element.[23]

ADM does no better with *Renner*, *Wiekhorst*, *Paris*, *Hroch*, and *George Clift Enterprises*, or any of the rest of its Section 766 cases.[24] In *Renner*,[25] the Nebraska Supreme Court cited *Miller Chemical* for the requirement that a plaintiff plead that a defendant committed "an intentional act inducing or causing a breach or termination," but reversed summary judgment for the defendant because there was a question of fact whether the defendant acted improperly in terminating the plaintiff to prevent the plaintiff from exercising rights under a stock option agreement. Thus, the Nebraska Supreme Court decided *Renner* based on the existence of a question of the propriety of the defendant's conduct, *i.e.*, whether defendant committed an "intentional act," not on whether the defendant induced a "breach." In *Renner*, the Nebraska Supreme Court considered what amounts to a

---

[21] 320 N.W.2d at 763.

[22] *Id.* at 762.

[23] *See Prof'l Mgmt. Midwest, Inc. v. Lund Co.*, 826 N.W.2d 225, 235 (Neb. 2012) (citing *Recio*, 771 N.W.2d at 121); *Steinhausen v. HomeServices of Neb., Inc.*, 857 N.W.2d 816, 831 (Neb. 2015); *Antaki v. Saint Francis Med. Ctr.*, 2018 WL 1411205, at *6 (D. Neb. Mar. 21, 2018) (citing *Steinhausen*, 857 N.W.2d at 831).

[24] *See* ADM Br. at 14–15.

[25] *Renner v. Wurdeman*, 434 N.W.2d 536, 541 (Neb. 1989),

Section 766 claim for intentionally inducing a breach and did not have occasion to consider a Section 766A claim for intentionally inducing impaired performance.

*Wiekhorst*[26] is another ADM Section 766 fact pattern case (although also not citing Section 766), in which the Nebraska Supreme Court affirmed summary judgment for the defendant because the defendant's "intentional acts" fell within the scope of a "privilege afforded design professionals." *Wiekhorst* again lists the five core elements of tortious interference with a business relationship or expectancy, including "harm sustained."[27] Breach of contract is not among the five core elements.

*Paris*[28] is also another ADM Section 766 fact pattern case (although also not citing Section 766), in which the Court of Appeals of Nebraska affirmed summary judgment for the defendant because plaintiff's loan agreement was terminated for failure to meet the required payment schedule, not due to an improper "intentional act."

In *Hroch*,[29] the Nebraska Court of Appeals affirmed summary judgment for the defendant based on the accrual date for the statute of limitations. *Hroch* is another ADM Section 766 fact pattern case (although not citing Section 766). The court in *Hroch* held that "an action for tortious interference with a business contract accrues

---

[26] *Wiekhorst Bros. Excavating & Equip. Co. v. Ludewig*, 529 N.W.2d 33, 41 (Neb. 1995).

[27] 529 N.W.2d at 39 (citing *Matheson*, 477 N.W.2d at 156).

[28] *Paris v. Crawford State Bank*, 1993 WL 578, at *14 (Neb. Ct. App. Jan. 5, 1993).

[29] *Hroch v. Farmland Indus., Inc.*, 548 N.W.2d 367, 371 (Neb. Ct. App. 1996).

*when the harm from the alleged interference occurred*,"[30] which, in that case, meant "when the breach of the business contract occurs." The court in *Hroch* also cited the core elements of tortious interference with a business relationship or expectancy, including "harm sustained," without listing "breach" as an element of the tort.[31]

In *George Clift Enterprises*,[32] the Nebraska Supreme Court again listed the core elements of a claim for tortious interference, including "harm sustained." *George Clift Enterprises* is another ADM Section 766 fact-pattern case, with an "apparent underlying breach." In that context, the Nebraska Supreme Court recited the requirement for the plaintiff to show "an intentional act that induces or causes a breach or termination." The Nebraska Supreme Court affirmed summary judgment for defendant because plaintiff failed to produce evidence to support an inference of interference.[33] The intentional act/breach sentence is a segue to analysis of the intentional act, not of the breach. A different segue would be needed for an impaired performance case. *George Clift Enterprises* is not a Section 766A case, did not purport to be a Section 766A case, and did not cite or discuss *Pettit* or *Recio* (*George Clift Enterprises* left *Pettit* and *Recio* as undisturbed law on Section 766A).

---

[30] 548 N.W.2d at 371 (emphasis added).

[31] 548 N.W.2d at 371 (citing *Koster v. P & P Enters.*, 539 N.W.2d 274, 278–79 (Neb. 1995)). *Koster* cites *Wiekhorst*, 529 N.W.2d at 39, which, in turn, cites *Matheson*, 477 N.W.2d at 156.

[32] *George Clift Enters., Inc. v. Oshkosh Feedyard Corp.*, 947 N.W.2d 510, 537 (Neb. 2020) (citing *Denali*, 926 N.W.2d at 610).

[33] *George Clift Enterprises, Inc.*, 947 N.W.2d at 538.

ADM states that: "In *all* the decisions after *Pettit* in which the court addressed the subject, it required a breach."[34] But that simply begs the question: what "subject"? Yes, the Nebraska Supreme Court addressed "the subject" of Section 766 fact pattern cases after *Pettit* and *Recio*. But no, those Section 766 cases are not Section 766A cases, and the Section 766 cases neither overturn *Pettit* and *Recio* nor purport to do so. Section 766 cases with the breach requirement are on one track, and Section 766A cases with the impaired performance requirement are on another track. ADM's irrelevant Section 766 cases do not supersede the relevant Section 766A cases.

For example, in *Denali*,[35] the Nebraska Supreme Court again listed the core elements of a claim for tortious interference, including "harm sustained." *Denali* is a Section 766 fact pattern case, with no allegations that the defendant caused the plaintiff to suffer increased cost or burden in the performance of its contracts. The Nebraska Supreme Court routinely segues from the core elements for tortious interference, which requires only "harm sustained," to the breach of contract requirement for a Section 766 fact pattern case, and did so again in *Denali*.[36]

---

[34] ADM Br. at 15 (emphasis by ADM).

[35] *Denali*, 926 N.W.2d at 627, *cited in* ADM Br. at 15. *Denali* cites *Thompson v. Johnson*, 910 N.W.2d 800 (Neb. 2018).

[36] *Denali*, 926 N.W.2d at 627 (citing *Pettit*, *Recio*, and *Miller Chemical*).

**F. ADM blurred the distinction between the Restatement sections throughout its response brief.**

ADM appears to argue that Justice Gerrard required breach of contract under both Restatements in *Pettit*, *i.e.*, that Justice Gerrard held that the defendant must cause a third-party to breach a contract with the plaintiff for Section 766 or that the defendant must cause the plaintiff to breach its contract with a third-party for Section 766A.[37] ADM is correct that plaintiffs must show a breach of contract for Section 766, but is incorrect that plaintiffs must show a breach of contract for Section 766A.

For Section 766, the defendant's "target" is a third-party, and the plaintiff's harm and disruption is that the third-party breaches its contract with the plaintiff. For Section 766A, the defendant's "target" is the plaintiff, and the plaintiff's harm and disruption is that the plaintiff suffers more expense or burden in performing its contract with the third-party. Thus, ADM is correct that Sections 766 and 766A are distinct regarding defendant's "target," but that is not the only distinction. The other distinction between the Restatement sections, which is fundamental to the essence of both torts, is the nature of the harm and disruption—breach of contract for Section 766 and impaired performance of contract for Section 766A.

On the one hand, ADM admits that "Section 766A does not require a breach."[38] On the other hand, ADM appears to argue that the only real distinction ("crucial

---

[37] *See* ADM Br. at 25–26.

[38] ADM Br. at 26.

distinction') between the two torts is the target of the improper interference.[39] Contrary to ADM's apparent view, the fact that the Restatement sections are distinct regarding the "target" of defendant's improper interference (third-party or plaintiff) does not make the Restatements the same regarding what resulting harm and disruption plaintiffs must show flowed from that improper interference.

Plaintiffs use Section 766 when the defendant causes a breach of contract and use Section 766A when defendant causes increased expense of burden in performance of the contract. ADM's argument that Sections 766 and 766A share a common requirement that the plaintiff show that the defendant caused a breach of contract is not a fair reading of *Pettit*, and is inconsistent with the face of both Restatements and the case law developed under the Restatements. Justice Gerrard did not rewrite Section 766A in *Pettit* (or *Recio*) to erase the fundamental distinction for relief under Section 766 when the defendant causes a breach of contract and relief under Section 766A when defendant causes increased expense or burden of performance of the contract. Thus, Green Plains was correct to seek justice under Section 766A to recover civil damages from ADM after ADM targeted improper interference at Green Plains and caused Green Plains to incur increased expense and burden in its performance of its ethanol sales contracts with its customers.

---

[39] *See* ADM Br. at 26 (citing a purported Section 766A "annotation," perhaps from Westlaw, that, in *Pettit*, "no liability existed for tortious interference, since there was no breach of the contract.")

Green Plains showed that Justice Gerrard implicitly recognized Section 766A as Nebraska law in *Pettit* and again in *Recio*.[40] The best argument that ADM could muster against the implicit recognition in *Pettit* is that it must be "*dicta*," claiming that Justice Gerrard "decided nothing" about Section 766A in *Pettit*.[41] To the contrary, Justice Gerrard applied the facts in *Pettit* and found that Pettit did not allege facts sufficient to meet the standard of Section 766A. In particular, Justice Gerrard found that "Section 766A … applies where the plaintiff alleges that the defendant interfered with the plaintiff's own performance of the contact," but that Pettit alleged that the defendant interfered with her counterparty's performance of the contract rather than her own performance of the contact.[42] Justice Gerrard also explained why it makes sense to require a Section 766A plaintiff to allege that the defendant directed its interference at the plaintiff: because, in that situation, "[t]he plaintiff should be able to show that the defendant's actions directly caused the plaintiff's performance of the contract to be more difficult, thereby resulting in damages."[43] Justice Gerrard treated Section 766A as Nebraska law in *Pettit*, applied the facts to the law, and decided that Pettit did not meet the requirements for a Section 766A claim. That is implicit recognition that Section 766A is Nebraska law, and it is not "*dicta*."

---

[40] Opening Br. at 18, 21.

[41] *See* ADM Br. at 27.

[42] *Pettit*, 583 N.W.2d at 610.

[43] *Pettit*, 583 N.W.2d at 610

Justice Gerrard cited *Pettit* in *Recio*, with no mention of any alleged "*dicta*."[44] In *Recio*, lost in ADM's retelling, Justice Gerrard described facts from the complaint that fit within Section 766A, then provided a contrary cite to *Fuller* that shows that Illinois rejects 766A, and then followed that with a harmonious cite to *Pettit* that shows that Nebraska accepts Section 766A.[45] The upshot is that the Nebraska Supreme Court accepted Section 766A in *Pettit* and again in *Recio*.

ADM notes that Judge Gerrard never mentioned Section 766A in his District of Nebraska "tortious interference" cases after joining that bench following his service on the Nebraska Supreme Court.[46] As Green Plains sees it, there is no reason to traverse Judge Gerrard's "tortious interference" cases from the District of Nebraska to try to learn about Section 766A because the topic of Section 766A never came up in those cases—reading Section 766 fact pattern cases to try to learn about Section 766A can only create needless confusion.

As ADM apparently sees it, needless confusion is good because ADM can use its own manufactured needless confusion to argue false ambiguity about Justice Gerrard's recognition of Section 766A in *Pettit* and *Recio*. Thus, ADM manufactured more needless confusion with its citation to *Riddle*,[47] which appears to be the only District of Nebraska decision in which Judge Gerrard cited *Pettit* and *Recio*. *Riddle*

---

[44] *Recio*, 771 N.W.2d at 132, n.5 and n.6.

[45] *Recio*, 771 N.W.2d at 132.

[46] ADM Br. at 30.

[47] See ADM Br. at 30, citing *Riddle v. Charter W. Bank*, 2019 WL 1436996, at *3 (D. Neb. Apr. 1, 2019).

is a Section 766 fact pattern case that failed because there was no breach of contract. *Riddle* contributes nothing to a fair understanding of Section 766A.

Moreover, not only did Judge Gerrard not have a Section 766A fact pattern or claim in front of him in *Riddle*, but he also had no reason to *sua sponte* consider a possible Section 766A claim because there were no facts suggesting increased expense or burden because there was no pecuniary loss.[48] The fact that Judge Gerrard enforced the Section 766 breach requirement in a Section 766 fact pattern case is unremarkable. In *Riddle*, Judge Gerrard did not dispense with the breach requirement (as ADM notes) for Section 766 (as ADM fails to note), nor did he address anything about Section 766A.

### G. Green Plains showed that it sufficiently pleaded existence of the impaired contracts and ADM's knowledge of the contracts.

The only other issues on appeal, which are not dispositive issues, are whether, on the well-pleaded facts of this case, the district court subjected Green Plains to excessive pleading standards by holding: (i) that Green Plains should have itemized the specific contracts at issue, the counterparties, the other terms of the contracts, and the specific losses suffered (to show the existence of Green Plains contracts with the price index), and (ii) that Green Plains did not sufficiently allege that ADM had knowledge of the contracts. Those holdings are unwarranted on the well-pleaded facts of this case. To show the existence of Green Plains contracts with the price index, Green Plains alleged that it is standard industry practice to sell ethanol at

---

[48] *See Riddle*, 2019 WL 1436996, at *3.

prices that are contractually indexed to the benchmark prices, and that it did so. To show ADM's knowledge that Green Plains does so, Green Plains alleged that Green Plains had entered into such contracts with ADM.

Despite finding that Green Plains did not sufficiently allege the existence of the contracts and ADM's knowledge of the contracts, the district court should have allowed Green Plains to replead with contracts or summaries thereof to address those concerns, but for what the district court saw as futility stemming from its uncertainty regarding whether Nebraska recognized Section 766A in *Pettit* and *Recio*.[49] Green Plains asks this Court to sustain its allegations regarding existence and knowledge of the contracts, or, in the alternative, to allow Green Plains to replead with contracts or summaries thereof (as Green Plains offered to do in its response to ADM's motion to dismiss).

Because the sufficiency issues are, at minimum, appropriate for leave to replead if the Court accepts *Pettit* and *Recio* as controlling precedent, Nebraska's recognition of Section 766A in *Pettit* and *Recio* is the linchpin for this appeal.

## <u>CONCLUSION</u>

This Court should reverse the district court's dismissal and remand for further proceedings consistent with its opinion.

---

[49] App. A-18 ("The court agrees with Plaintiffs that, were the court to have granted this Motion on just the first and second grounds, whether Plaintiffs sufficiently pled the existence of a valid contract and ADM's knowledge of said contract, they should be given at least one more opportunity to amend their Complaint and replead.")

Respectfully submitted,

/s/ Adam J. Levitt

Adam J. Levitt
*One of the Attorneys for*
*Plaintiffs-Appellants*

ADAM J. LEVITT (*Counsel of Record*)
JOHN E. TANGREN
MARK S. HAMILL
DICELLO LEVITT LLP
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 6,691 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f). This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

Dated: June 8, 2023

/s/ Adam J. Levitt
Adam J. Levitt

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2023, the Reply Brief of Plaintiffs-Appellants Green Plains Trade Group LLC et al. was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Adam J. Levitt
Adam J. Levitt